FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ROCKY PATEL PREMIUM CIGARS, INC.; OLIVA CIGAR CO.; PILOTO CIGARS, INC., doing business as Padron Cigars, Inc.; A. FUENTE AND CO., LLC; ASHTON DISTRIBUTORS, INC.; PREMIUM IMPORTS, INC., doing business as La Flor Dominicana; MY FATHER CIGARS, INC.; CIGAR RIGHTS OF AMERICA; PREMIUM CIGAR ASSOCIATION,

*Plaintiffs - Appellants*,

v.

ROB BONTA, in his official capacity as Attorney General of the State of California,

*Defendant - Appellee*.

No. 25-8060

D.C. No. 8:25-cv-02244-MRA-PD

OPINION

Appeal from the United States District Court
for the Central District of California
Monica Ramirez Almadani, District Judge, Presiding

Argued and Submitted April 14, 2026
Pasadena, California

Filed August 27, 2026

Before: Richard A. Paez, Consuelo M. Callahan, and Patrick J. Bumatay, Circuit Judges.

Opinion by Judge Bumatay

## SUMMARY[*]


**California Unflavored Tobacco List Statute / Commercial Speech**

The panel affirmed the district court's denial of Rocky Patel Premium Cigars, Inc.'s motion for a preliminary injunction seeking to enjoin enforcement of California's Unflavored Tobacco List statute ("UTLS"), which requires that tobacco products be placed on a published "Unflavored Tobacco List" before they can be offered directly to California consumers or to retailers, wholesalers, or other persons for sale in California.

To place a product on the Unflavored Tobacco List, manufacturers and importers are required to submit an application to the California Attorney General. The application must include, in part, a description of the product, the product's FDA status, and a certification that the product lacks a characterizing flavor. Rocky Patel fears that


[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the UTLS's application and fee requirements will specially burden the premium-cigar industry.

Rocky Patel, along with other manufacturers and trade associations focused on premium cigars, challenges California's law alleging that (1) the Family Smoking Prevention and Tobacco Control Act ("TCA"), which requires the Food and Drug Administration to regulate certain tobacco products, expressly preempts California's UTLS, and (2) the First Amendment bars the law's presumption of impermissible flavoring based on manufacturers' statements.

The panel first held that Rocky Patel is unlikely to succeed on the merits of its claim that the TCA preempts the UTLS's requirements for premium cigars. The panel held that because placement on the Unflavored Tobacco List is a prerequisite for *selling* tobacco products to consumers in the State, the UTLS falls within the TCA's Savings Clause, which exempts from preemption state-law requirements relating to the sale of tobacco products to individuals of any age.

Addressing Rocky Patel's arguments against the applicability of the Savings Clause, the panel held that (1) the Savings Clause is not limited to requirements imposed on retail sellers; (2) the UTLS is an exercise of California's historic authority over tobacco regulation; (3) the UTLS's ban on possession for sale is sufficiently related to retails sales, saving it from preemption; and (4) because Rocky Patel hasn't alleged that the UTLS sets any standard for the manufacture of premium cigars, the law falls within the scope of the Savings Clause.

The panel further held that based on the Attorney General's representations as to how the UTLS works, Rocky

Patel is unlikely to succeed on its First Amendment claims. For premium cigars, the UTLS poses a minimal burden on commercial speech. While Rocky Patel alleges that the UTLS's presumption of impermissible flavoring based on manufacturers' statements would chill its ability to describe the tasting "notes" that cigar aficionados might glean from their premium cigars, the Attorney General repeatedly represented that he will not deny a premium cigar placement on the Unflavored Tobacco List based on any speech, so long as manufacturers file a completed application. As such, Rocky Patel has not shown that the UTLS restricts its speech more than necessary to meet the State's interest.

---

## COUNSEL

Michael J. Edney (argued), Hunton Andrews Kurth LLP, Washington, D.C.; Jason J. Kim, Hunton Andrews Kurth LLP, Los Angeles, California; Plaintiffs-Appellants.

Natalie S. Torres (argued), Supervising Deputy Attorney General; David C. Goodwin, Jennifer Y. McClory Hamilton, Chris Han, and Peter F. Nascenzi, Deputy Attorneys General; Neli N. Palma, Senior Assistant Attorney General; Rob Bonta, California Attorney General; Office of the California Attorney General, Sacramento, California; for Defendants-Appellees.

Jordan Raphael, Byron Raphael LLP, Los Angeles, California; Dennis A. Henigan and Andrew R. Tardiff, Campaign for Tobacco-Free Kids, Washington, D.C.; for Amici Curiae Public Health, Medical, and Community Organizations.

## OPINION

BUMATAY, Circuit Judge:

Under federal law, a "premium" cigar must be free of flavoring additives. *See* 21 C.F.R. § 1114.3. The burning question here is whether federal law preempts California's scheme for banning sales of flavored tobacco products as applied to premium cigars. It does not. We thus affirm the district court's denial of a preliminary injunction.

## I. BACKGROUND

### A. The Federal Tobacco Control Act

The Family Smoking Prevention and Tobacco Control Act ("TCA") requires the Food and Drug Administration ("FDA") to regulate certain tobacco products. Pub. L. No. 111–31, 123 Stat. 1776 (2009) (codified at 21 U.S.C. § 387 *et seq*.). These include products specifically listed by statute (such as cigarettes) and "any other tobacco products that the Secretary [of Health and Human Services] by regulation deems to be subject to th[e] subchapter." 21 U.S.C. §§ 321(d), 387a(b). If a product is covered, manufacturers must submit them to the FDA for premarket review. *Id.* § 387j(a)(2), (c)(1)(A)(i). The agency ensures that the products are "appropriate" to protect public health, that they meet manufacturing standards, and that they do not have false or misleading labeling. *See id.* § 387j(c)(2).

By regulation, the FDA exempts "premium" cigars from premarket review. 21 C.F.R. § 1114.1(d). To qualify as a premium cigar, among other requirements, a cigar must be hand-made, have no "characterizing flavor other than

tobacco," and "[c]ontain[] only tobacco, water, and vegetable gum with no other ingredients or additives." *Id.* § 1114.3.

The TCA has a three-layered provision governing the preemption of state tobacco laws—what we've called a "preservation sandwich." *R.J. Reynolds Tobacco Co. v. County of Los Angeles*, 29 F.4th 542, 550, 555 (9th Cir. 2022). The first layer "broadly preserves state, local, and tribal power to enact *any* regulation concerning tobacco products that is 'in addition to or more stringent than' those promulgated by the TCA." *Id.* at 550 (citing 21 U.S.C. § 387p(a)(1)) ("Preservation Clause"). The second layer specifically preempts state or municipal tobacco laws that impose "any requirement which is different from, or in addition to, any requirement under the provisions of [the TCA] relating to," among other things, "premarket review." 21 U.S.C. § 387p(a)(2)(A) ("Preemption Clause"). The last layer, however, saves from preemption any state-law "requirements relating to the sale, distribution, possession, information reporting to the State, exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age." *Id.* § 387p(a)(2)(B) ("Savings Clause").

## B.
## The California Unflavored Tobacco List Statute

In 2022, California enacted a ban on the retail sale of flavored tobacco products. *See* S.B. 793, 2019-2020 Reg. Sess. (Cal. 2020) (enacted by voter referendum Nov. 8, 2022) (codified at Cal. Health & Safety Code § 104559.5). The ban prohibits "[f]lavored tobacco product[s]," including "any tobacco product[s] that contain[] a constituent that imparts a characterizing flavor" "other than the taste or odor

of tobacco." Cal. Health & Safety Code § 104559.5(a)(1), (6).

In 2024, California enacted the Unflavored Tobacco List statute ("UTLS"). *See* A.B. 3218, 2023-2024 Reg. Sess. (Cal. 2024) (codified in scattered sections of the Cal. Bus. & Prof. Code, Cal. Health & Safety Code, and Cal. Rev. & Tax. Code). The UTLS requires that tobacco products be placed on a published "Unflavored Tobacco List" before they can be offered directly to California consumers or to "retailer[s], wholesaler[s], or other person[s] for sale in California." *See* Cal. Health & Safety Code § 104559.1(g), (o)(1); *id.* § 104559.5(a)(6), (b)(1). To place a product on the Unflavored Tobacco List, manufacturers and importers are required to submit an application to the California Attorney General. *Id.* § 104559.1(b)(1). The application must include a description of the product, the product's FDA status, a certification that the product lacks a characterizing flavor, packaging and marketing information, a product sample, and other information if requested by the Attorney General. *See id.* § 104559.1(b); Cal. Code Regs. tit. 11, §§ 945(c), 946(e), 947(b). State regulations specify that if the federal Secretary of Health and Human Services has exempted the tobacco product from the TCA's scope, then the applicant must provide a copy of the relevant federal regulation. Cal. Code Regs. tit. 11, §§ 945(c)(8)(B)(ii)(III)(a), 946(g)(11).

Based on the application, the Attorney General determines whether a tobacco product "lack[s] a characterizing flavor." *See* Cal. Health & Safety Code § 104559.1(a), (c). If the manufacturer or importer "has made a statement or claim directed to consumers or to the public that the tobacco product has or produces a characterizing flavor," the Attorney General must presume

Case: 25-8060, 08/27/2026, DktEntry: 34.1, (8 of 19)



that the product is impermissibly flavored. *Id.* §§ 104559.1(d), 104559.5(b)(2). The manufacturer or importer may rebut this presumption. *Id.* §§ 104559.1(d), 104559.5(b)(2).

Only if the Attorney General determines that the tobacco product does not have a characterizing flavor will the product be placed on the Unflavored Tobacco List. *Id.* § 104559.1(e). The Attorney General, however, must remove approved products from the Unflavored Tobacco List if they are later determined to have a characterizing flavor. *Id.* § 104559.1(f)(1). A manufacturer or importer may seek review of a denied application in state court. *Id.* § 104559.1(l)(1).

## C.
## Rocky Patel's Challenge to the Unflavored Tobacco List Statute

Rocky Patel Premium Cigars, Inc., along with other manufacturers and trade associations focused on premium cigars, challenges California's law. Rocky Patel fears that the UTLS's application and fee requirements will specially burden the premium-cigar industry. While mass-produced cigarettes, electronic tobacco products, and non-premium cigars generally stay consistent from year to year, premium cigars are made in low volumes by hand with unique blends that change annually. So premium-cigar manufacturers must submit far more applications to have their products—with all their variations—placed on the Unflavored Tobacco List.

According to Rocky Patel, the expense and effort required for premium-cigar manufacturers to comply with the UTLS unfairly burdens the industry. Its premium cigars—as defined by federal law—pose no risk of being impermissibly flavored because they have no non-tobacco

additives. *See* 21 C.F.R. § 1114.3; Cal. Health & Safety Code § 104559.5(a)(1)–(2), (6). Yet application and renewal fees cost Rocky Patel far more relative to other tobacco-product manufacturers. *See* Cal. Health & Safety Code § 104559.1(k)(1) (authorizing "reasonable" fees up to $1,000 per product or variant application); Cal. Code Regs. tit. 11, § 954 (setting out current fees of $300 for original-product applications, and $150 for variants or annual renewals). Indeed, Rocky Patel estimates it has already paid nearly $50,000 in initial application fees and will pay around $35,000 in annual renewal fees. And it projects that it will have to stop selling half of its products in the State because of compliance costs.

In October 2025, before the UTLS went into effect, Rocky Patel and the other appellants sued California Attorney General Rob Bonta. After a request for a temporary restraining order against UTLS enforcement was denied, Rocky Patel moved for a preliminary injunction. Rocky Patel argued that (1) the TCA expressly preempts the UTLS as applied to premium cigars, and (2) the First Amendment bars the law's presumption of impermissible flavoring based on manufacturers' statements. The district court found that Rocky Patel was unlikely to succeed on the merits and denied the motion. On appeal, we review the denial of a preliminary injunction for abuse of discretion and the underlying questions of law de novo. *See Mobilize the Message, LLC v. Bonta*, 50 F.4th 928, 934 (9th Cir. 2022).

## II.
## DISCUSSION

Rocky Patel seeks a preliminary injunction under the TCA and the First Amendment. To obtain a preliminary injunction, a movant must show (1) a likelihood of success

on the merits; (2) that it is likely to suffer irreparable harm absent relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The first element is dispositive unless "serious factual questions" remain and the balance of equities "tips sharply" in the movant's favor. *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024). As Rocky Patel fails to meet its burden at the first step, we do not address the remaining factors. *See id.* at 1038–39.

## A.
## The Unflavored Tobacco List Statute Is Not Preempted

Rocky Patel is unlikely to succeed on the merits of its claim that the TCA preempts the UTLS's requirements for premium cigars. To determine the scope of TCA preemption, we look to the statute's text. *R.J. Reynolds Tobacco*, 29 F.4th at 552–53; *see also, e.g.*, *Montgomery v. Caribe Transp. II, LLC*, 146 S. Ct. 1199, 1204 (2026) (holding that a federal preemption claim "boil[ed] down" to the interpretation of the statutory phrase "with respect to motor vehicles"). The TCA's Preemption Clause preempts state laws that impose "any requirement which is different from, or in addition to, any requirement under the provisions of [the TCA] relating to . . . premarket review[.]" 21 U.S.C. § 387p(a)(2)(A). But, the Savings Clause exempts from preemption state-law "requirements relating to the sale . . . of[] tobacco products [to] individuals of any age[.]" *Id.* § 387p(a)(2)(B). Assuming without deciding that the Preemption Clause applies to the UTLS as a requirement "relating to . . . premarket review," *id.* § 387p(a)(2)(A), the question is whether the Savings Clause exempts the UTLS from preemption because it "relat[es] to the sale" of tobacco products. *See id.* § 387p(a)(2)(B).

Because placement on California's Unflavored Tobacco List is a prerequisite for *selling* tobacco products to consumers in the State, *see* Cal. Health & Safety Code § 104559.1(o)(1); *id.* § 104559.5(a)(6), (b)(1), the UTLS falls safely within the TCA's Savings Clause. "Relating to" is a "broad" phrase. *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (simplified). Its ordinary meaning is "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with . . . even if the connection is indirect." *Chevron USA Inc. v. Plaquemines Par.*, 146 S. Ct. 1052, 1060 (2026) (simplified); *see also Relate*, Black's Law Dictionary (12th ed. 2024) ("[t]o have some connection to; to stand in relation to"). So even an indirect connection is sufficient unless it is "tenuous, remote, or peripheral." *Chevron USA*, 146 S. Ct. at 1061 (simplified).

Under the UTLS, tobacco products are ineligible for retail sale within the State unless they appear on the Unflavored Tobacco List. *See* Cal. Health & Safety Code § 104559.1(o)(1); *id.* § 104559.5(a)(6), (b)(1). The Attorney General can only place unflavored products on the Unflavored Tobacco List after their manufacturers or importers apply. *See id.* § 104559.1(b)(1). The application must include product descriptions, the FDA status of the product, certification that the product lacks a characterizing flavor, packaging and marketing information, a sample of the product, and other data necessary for the Attorney General to confirm a lack of flavoring. *See id.* § 104559.1(b)(1); Cal. Code Regs. tit. 11, §§ 945(c), 946(e), 947(b). This information allows California to verify whether a product is in fact unflavored.

In short, the UTLS and its application process are directly tied to California's ban on retail sales of flavored

tobacco products. Premium-cigar manufacturers may (correctly) believe that their products are unflavored under federal law, but the TCA lets California ask them to prove it. The Unflavored Tobacco List and its application process help the State ensure only approved unflavored tobacco products end up on California retail shelves. The UTLS is not "tenuous[ly], remote[ly], or peripheral[ly]" connected to California's retail sales prohibition. *See Chevron USA*, 146 S. Ct. at 1061 (simplified). Rather, its requirements directly "relat[e] to" retail sales, which Congress left in the hands of the States. 21 U.S.C. § 387p(a)(2)(B).

Precedent confirms this reading. In *R.J. Reynolds Tobacco*, we likewise held that the Savings Clause applied to Los Angeles County's ban on the sale of flavored tobacco products. 29 F.4th at 552. We said that the ban was simply a "requirement that tobacco retailers or licensees throughout the County not sell flavored tobacco products." *Id.* at 558. That's all that was necessary for Los Angeles County's ban to fit within the Savings Clause. *Id.* Similarly, California requires manufacturers and importers to prove their products are unflavored before those products are sold within the State. Cal. Health & Safety Code § 104559.1(b)(1). This focus on retail sales satisfies the Savings Clause's requirements.

Rocky Patel argues against the Savings Clause's applicability for four reasons.

First, it argues that California's law goes beyond what's allowable under the TCA because the UTLS acts directly on manufacturers—rather than on retail sellers. It is true that the UTLS requires manufacturers to comply with the application process. *See id.* And to be sure, in *R.J. Reynolds Tobacco,* we agreed that "Congress has allowed the federal

government to set the standards regarding how a product would be manufactured and marketed[.]" 29 F.4th at 555. Based on this, Rocky Patel claims that the Savings Clause applies only to regulations that dictate what happens inside a retail store.

But nothing in the text of the TCA or our precedent requires such a narrow reading of the statute. To begin, the Savings Clause isn't textually limited to regulations on retailers—indeed, it doesn't specify who in the chain of tobacco sales it applies to. *See* 21 U.S.C. § 387p(a)(2)(B). Nor does the Savings Clause as a whole apply exclusively to retail activities. It also exempts state-law requirements on other tobacco-related activities, including the "distribution, possession, information reporting to the State, exposure to, access to, the advertising and promotion of, or use of, tobacco products by individuals of any age." *Id.* These activities may take place outside of retail stores. And finally, nothing in *R.J. Reynolds Tobacco* requires us to limit the TCA's application to retail-store conduct. While the UTLS imposes application requirements on manufacturers of premium cigars, it doesn't set any "standards" on how premium cigars are "manufactured and marketed." 29 F.4th at 555. Indeed, Rocky Patel doesn't allege that the UTLS requires any change in how it manufactures premium cigars. Thus, we see no reason to limit the Savings Clause only to requirements imposed on retail sellers.

Rocky Patel next argues that the TCA must be read considering "the long history of State regulation of tobacco products" and that the UTLS is thus outside its scope as "an innovation borrowed almost directly from federal law." The Attorney General disputes this characterization. He compares the UTLS to "directory statutes" enacted to ensure compliance with the 1998 Master Settlement Agreement that

obligated tobacco manufacturers to make annual payments offsetting "the increased cost to the health care system created by smoking." *See Big Sandy Rancheria Enters. v. Bonta*, 1 F.4th 710, 716–17 (9th Cir. 2021) (describing laws that require States "to maintain and publish a directory of tobacco product manufacturers and tobacco brand families that have been approved for sale"). And he compares it to fire-safe laws, which require cigarette manufacturers to certify in writing that their cigarettes adequately self-extinguish before they can be sold in the State. *See, e.g.*, Cal. Health & Safety Code § 14953(a); Okla. Stat. tit. 74, § 326.3(A); Tenn. Code § 68-102-503(a)(1); Vt. Stat. Ann. tit. 20, § 2757(b).

Regardless of the UTLS's characterization, history seemingly cuts against Rocky Patel. States have historic police power over the health, safety, and general welfare of their citizens. *See* Daniel B. Rodriguez, *Good Governing: The Police Power in the American States* 29, 261 (2024) (noting the Pennsylvania Constitution of 1776 included an express declaration of the state police power). The TCA itself reflects that "states and localities have historically played a primary role in regulating the sale of tobacco products." *R.J. Reynolds Tobacco*, 29 F.4th at 555. This backdrop matters because, as stated earlier, the UTLS directly aids California's ban on the sale of flavored tobacco. So even if the UTLS's method is an "innovation," it is still an exercise of California's historic authority over tobacco regulation. And nothing in the TCA's text restricts the Savings Clause only to requirements with a close "historical twin." *See United States v. Hemani*, 146 S. Ct. 1677, 1686 (2026) (simplified).

Rocky Patel argues next that the UTLS is more than a regulation on retail sales because it restricts possession of

unlisted tobacco products in California. The Attorney General disagrees, asserting that the UTLS only restricts the possession of tobacco products by retailers and wholesalers, which hold products destined for retail sale within the State. *See* Cal. Bus. & Prof. Code §§ 22974.2(a)(1), 22978.3(a)(1). And Rocky Patel doesn't show how the UTLS will prevent manufacturers, importers, distributors, or anyone else that is not a retailer or wholesaler from possessing unlisted tobacco products. In any case, this ban on possession for sale doesn't set "tobacco product standards," which lie exclusively with the federal government. *R.J. Reynolds Tobacco*, 29 F.4th at 560. So this scheme is sufficiently "relat[ed] to" retail sales, saving it from preemption. *See* 21 U.S.C. § 387p(a)(2)(B).

Finally, Rocky Patel argues that reading the Savings Clause to cover the UTLS would leave the Preemption Clause meaningless. It contends that this would effectively allow States to impose any tobacco regulations—even those reserved to the federal government—under the guise of a sales ban. But we've encountered this argument before. In *R.J. Reynolds Tobacco*, we said:

> Even though the preemption clause does not preempt sales bans, it's hardly useless. It still preempts states from setting actual product standards. A state cannot *require* tobacco companies to make their products according to any particular standard—only the federal government can do that. But a state can place restrictions on the retail sale of a tobacco product, including banning its sale altogether. In other words, . . . the balance of power struck by the TCA allows state and local governments to opt out of the market, but it

> doesn't allow them to otherwise set parameters for that market that conflict with the federal government's tobacco product standards. That is the "delicate balance" established by Congress in § 387p's unique preservation sandwich.

29 F.4th at 560.

So the Preemption Clause continues to do considerable work. Even with the Savings Clause, a State cannot "set[] actual product standards"—either directly or indirectly through a sales ban. *Id.* If a sales ban would "*require* tobacco companies to make their products according to any particular standard," the Savings Clause must give way to the Preemption Clause. *Id.*; *see also U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York*, 708 F.3d 428, 434 (2d Cir. 2013) ("Certainly, any purported sales ban that in fact functions as a command to tobacco manufacturers to structure their operations in accordance with locally prescribed standards would not escape preemption simply because the City framed it as a ban on the sale of tobacco produced in whatever way it disapproved." (simplified)). Because Rocky Patel hasn't alleged—let alone established—that the UTLS sets any standard for the manufacture of premium cigars, the law falls within the Savings Clause's scope.

**B.**

**The Unflavored Tobacco List Statute Does Not Violate the First Amendment**

Based on the Attorney General's representations as to how the UTLS works, Rocky Patel is also unlikely to succeed on its First Amendment claims. When considering

an application for a tobacco product to be placed on the Unflavored Tobacco List,

> The Attorney General shall presume a brand style to have a characterizing flavor if the manufacturer or importer . . . has made a statement or claim directed to consumers or to the public that the tobacco product has or produces a characterizing flavor, including, but not limited to, any text, color, or images on the product's labeling or packaging, that explicitly or implicitly communicates that the tobacco product has a characterizing flavor. This presumption may be rebutted by the manufacturer or importer.

Cal. Health & Safety Code § 104559.1(d).

Rocky Patel alleges that this feature of the UTLS would chill its ability to describe the tasting "notes" that cigar aficionados might glean from their premium cigars, such as notes of "leather, cocoa, fruit, or herbs." And Rocky Patel says this is true even though the presumption is rebuttable. *See* Cal. Health & Safety Code § 104559.1(d).

"Although commercial speech is protected by the First Amendment, not all regulation of such speech is unconstitutional." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 367 (2002). Under the "commercial speech" doctrine, courts may invalidate laws restricting speech "[i]f the speech concerns lawful activity and is not misleading[.]" *Id.* (citing *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 566 (1980)). If so, the government has the burden of proving that the law furthers a "governmental interest [that] is substantial," "directly

advances the governmental interest asserted," and "is not more extensive than is necessary to serve that interest." *Id.* (simplified). Only the last factor is at issue.

The UTLS's speech restrictions are "not more extensive than is necessary to serve [the State's] interest." *Id.* (simplified). For premium cigars, the UTLS poses a minimal burden on commercial speech. Recall that manufacturers and importers must include any FDA exemptions and copies of the relevant FDA rules in their UTLS applications. *See* Cal. Code Regs. tit. 11, §§ 945(c)(8)(B)(ii)(III)(a), 946(g)(11). So manufacturers and importers of premium cigars must certify that their products are exempted from the TCA. *See* 21 C.F.R. §§ 1114.1(d), 1114.3.

These requirements further the State's interest in enforcing its ban on the sales of flavored tobacco. And, based on the Attorney General's representations, they negate any presumption based on speech. Because an FDA-exempt premium cigar necessarily lacks a non-tobacco "characterizing flavor," *see id.* § 1114.3; Cal. Health & Safety Code § 104559.5(a)(1)–(2), (6), a premium-cigar certification automatically and immediately rebuts any presumption based on manufacturers' or importers' descriptions of their cigars. The Attorney General will place premium cigars on the Unflavored Tobacco List as soon as he receives certification that they are exempt from the TCA under 21 C.F.R. § 1114.1(d) and § 1114.3, regardless of any characterization of the premium cigar's flavor profile by importers or manufacturers.

The Attorney General has repeatedly represented that he will not deny a premium cigar placement on the Unflavored Tobacco List based on any speech, so long as manufacturers

or importers file a completed application. As he described it, the application process "literally is checking a box and writing, 'We are not subject to the FDA process, because we are premium cigars, under that definition.' And that is literally it." He also said that any speech by importers and manufacturers will not affect placement once a completed application is submitted—"anything that [the manufacturer has] said about the product doesn't come into play."

We cannot say that a mere box-checking exercise on premium-cigar applications offends the First Amendment. Of course, should the Attorney General's representations turn out to be incorrect, that would require a different analysis. But for now, Rocky Patel has not shown that the UTLS restricts its speech more than necessary to meet the State's interest. *See Thompson*, 535 U.S. at 367.

## III.

For these reasons, we affirm the denial of Rocky Patel's motion for a preliminary injunction.

**AFFIRMED.**